**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

OLIVIA J. HOUSLEY,

       *Plaintiff,*

  vs.

THE BOEING COMPANY and SPIRIT
AEROSYSTEMS, INC.,

       *Defendants.*

Case No. 6:13-cv-1021-EFM-KMH

**MEMORANDUM AND ORDER**

Plaintiff Olivia J. Housley ("Plaintiff") seeks monetary damages from her former employer, The Boeing Company ("Boeing"), and Spirit Aerosystems, Inc., ("Spirit") for alleged age discrimination in violation of the Age Discrimination in Employment Act (ADEA). This matter is before the Court on Boeing's Motion for Summary Judgment (Doc. 36). For the reasons stated below, Boeing's motion is granted.

**I.      Factual and Procedural Background**

This matter arises out of Boeing's sale of the assets of its commercial facilities in Wichita, Kansas (the "Wichita Division") to Spirit on June 16, 2005. On that same day, when the divestiture to Spirit was completed, Boeing terminated all employees of the Wichita Division. On June 17, 2005, Spirit began operations at the Wichita Division. As part of the sale, Boeing agreed to allow Spirit to use the Wichita Division managers to assess whether Spirit would offer

any of the 10,000 former Boeing employees employment in Spirit's Day-One workforce. Throughout Spirit's hiring process, Boeing also allowed Spirit to use personnel from the Wichita Division's Human Resources organization to oversee the selections. Spirit believed that a merit-based selection of approximately eighty-five percent of Boeing's existing workforce would allow Spirit to begin business with the best available employees and a more productive workforce.

Plaintiff was considered for employment in Spirit's Day-One workforce. Second-level manager Tom Brosius and first-level manager Mary Alumbaugh, who had had direct supervisory control over Plaintiff during her employment with Boeing, met with Human Resources representatives on March 1, 2005, to discuss the possibility of hiring Plaintiff for Spirit. Spirit developed seven criteria by which the managers were to evaluate the employees. Spirit's criteria explicitly prohibited the managers from evaluating the employees or making employment decisions based on the employee's race, gender, national origin, or age. Defendants allege that Plaintiff was not hired for employment in Spirit's Day-One workforce because she was perceived as having a lower level of skills and problems teaming. Plaintiff alleges that she was not hired because of her age. At the time of the hiring decision, Plaintiff was fifty-six years old.

Plaintiff's Fourth Amended Complaint alleges two counts of age discrimination. Count I is targeted at defendant Boeing. Plaintiff alleges that Boeing, through its agents, participated in Spirit's hiring decisions regarding Boeing's former employees. Count II is targeted at defendant Spirit. Boeing now moves for summary judgment as to Count I of Plaintiff's Fourth Amended Complaint.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[1] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[2] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[3] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[4] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits–conclusory allegations alone cannot survive a motion for summary judgment.[5] The court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[6]

## III.    Analysis

Plaintiff claims that Boeing is liable because Boeing's managers participated in the decision to not hire Plaintiff for Spirit's Day-One workforce. Plaintiff further alleges that this decision was motivated by her age.

---

[1] FED. R. CIV. P. 56(c).

[2] *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[3] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[4] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[5] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In response, Defendant argues that it cannot be held liable for the actions of its former managers because these managers were not acting within the scope of their Boeing employment. Boeing claims that the decision to not hire Plaintiff was made solely by Spirit and its agents.

**Plaintiff Has Failed to Prove the Existence of an Adverse Employment Action**

Plaintiff's federal claims arise out of the ADEA which states:

> It shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.[7]

To demonstrate a prima facie case of age discrimination, a plaintiff must prove the following: "(1) she is a member of the class protected by the [ADEA]; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class."[8] Boeing argues and the Court agrees that Plaintiff has failed to prove she suffered an adverse employment action, at least as the matter pertains to Boeing. The only direct adverse employment action Boeing took against Plaintiff involved her termination. Plaintiff does not allege that Boeing violated the ADEA when it terminated Plaintiff because Boeing terminated every employee in its Wichita Division.[9]

Plaintiff alleges a separate adverse employment action, arguing that Boeing is liable for the actions of its former managers who allegedly deprived Plaintiff of future employment

---

[7] 29 U.S.C.A. § 623(a).

[8] *Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).

[9] *See Mason v. Anadarko,* 1998 WL 166562, at *5 (D. Kan. Mar. 2, 1998) (granting employer's motion for summary judgment as to a claim of disparate treatment and discrimination where employer had terminated all employees at two plants).

opportunities. The ADEA makes it unlawful for an employer to "limit, segregate, or classify his employees" in a way that deprives an employee of future employment opportunities, because of the employee's age.[10] Boeing's former managers, Brosius and Alumbaugh, did classify Plaintiff as "NR – lower level of skills/has problems teaming,"[11] and this classification likely played a significant role in Spirit's decision to not hire Plaintiff. However, because these employees were acting solely as Spirit's agents, Boeing cannot be held liable for this classification, even if deemed unlawful.

Under Kansas Law and the "borrowed servant doctrine," "an employer who temporarily borrows an employee may become liable for the employee's negligence. The 'borrowing employer' is sometimes referred to as the 'special employer,' and the 'lending employer' is sometimes referred to as the 'general employer.'"[12] Although "[a] person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other,"[13] Boeing is not vicariously liable for the actions of its managers simply because it was the general employer:

> A general employer may continue to employ and pay an individual and nevertheless resign 'full control' of the individual to another employer, for a particular project or purpose. 'Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not as to the act in question, he is acting in the business of and under the direction of one or the other.'[14]

---

[10] 29 U.S.C.A. § 623(a)(2)

[11] Plaintiff's Amended Response, Doc. 55, p. 5.

[12] *Bright v. Cargill, Inc.*, 251 Kan. 387, 404, 837 P.2d 348, 362 (Kan. 1992).

[13] Restatement (Second) of Agency § 226 (1957).

[14] *Affiliated FM Ins. Co. v. Neosho Const. Co., Inc.*, 192 F.R.D. 662, 672 (D. Kan. 2000) (quoting Restatement (Second) of Agency § 227, comment a (1957)).

To demonstrate sole liability in Spirit, as the special employer, Boeing need only demonstrate that the employees "abandoned" their service to Boeing by working solely within the scope of employment of Spirit during the hiring process.[15] Although the question of abandonment is typically one left for the jury,[16] Plaintiff concedes that:

> [T]he Boeing managers' participation in Spirit's selection process, including the training and the selection meetings, was outside of their ordinary Boeing responsibilities related to the production of aircraft. Their participation was a direct result of the divestiture of the Boeing Wichita commercial facility, which was outside of the scope of every Boeing employee's job description.[17]

Plaintiff attempts to argue that Boeing allowed Spirit to use its personnel in an effort to "oversee" the hiring process, implying that Boeing continued to play a role. However, in the same line of reasoning, Plaintiff concedes that these managers were simply "carrying out a duty Boeing assigned to them as a part of the divestiture," which Plaintiff previously admitted was "outside of the scope of every Boeing employee's job description."[18] Boeing has met its burden of demonstrating that its managers were working solely within the scope of Spirit's employment. As such, Boeing effectively resigned full control and abandoned these employees to the employment of Spirit. Boeing has successfully demonstrated that Plaintiff failed to prove the existence of an adverse employment action.

---

[15] *See id.* ("To prove sole liability, [general employer] had to show [employee's] act was within the scope of employment with [special employer].").

[16] *Bright*, 251 Kan. at 388, 837 P.2d at 353.

[17] Plaintiff's Amended Response, Doc. 55, p. 6.

[18] Plaintiff's Amended Response, Doc. 55, pp. 6, 13.

**Plaintiff Has Failed to Bring Forth Specific Facts Showing a Genuine Issue for Trial**

Once the movant has demonstrated the absence of an essential element of the nonmovant's claim, the burden shifts to the nonmovant to bring forth specific facts from the record showing a genuine issue for trial.[19] Although Plaintiff explicitly concedes that the Boeing managers who made the recommendations as to which former Boeing employees should be hired by Spirit in its Day-One workforce acted as agents for Spirit, Plaintiff attempts to dispute that the Boeing managers acted *only* for Spirit.[20] Plaintiff argues that Boeing (1) engaged in conduct classifying the plaintiff as "NR – lower level of skills/has problems teaming," (2) knew that Spirit wanted to reduce the present Boeing workforce, (3) agreed to participate in the selection process.[21] In support of this position, Plaintiff cites Interrogatory No. 2 to Boeing, Interrogatory No. 10 to Spirit, Brosius's Deposition and Exhibits, and Alumbaugh's Deposition.

None of the documents the Plaintiff cites from the record contains even a "scintilla of evidence" that the Boeing managers were acting under the scope of their Boeing employment.[22] These documents actually imply the opposite conclusion: that the Boeing managers were working solely for Spirit. Boeing Interrogatory Answer No. 2 states explicitly that "Boeing allowed Spirit to use the Wichita Division managers and Human Resources employees (who were going to be terminated by Boeing and made available to Spirit) to be *Spirit's Agents* in the hiring process and make hiring recommendations."[23] Boeing Interrogatory Answer No. 2 further

---

[19] *Garrison*, 428 F.3d at 935.

[20] Plaintiff's Amended Response, Doc. 55, p. 2.

[21] Plaintiff's Amended Response, Doc. 55, p. 10.

[22] *Garrison*, 428 F.3d at 935.

[23] Defendant Boeing's Answers and Objections to Plaintiff's First Set of Interrogatories, Doc. 40, p. 2.

states that "Boeing, as an entity, did not know what hiring recommendations were made as to individual employees."[24] Spirit Interrogatory Answer No. 10 describes the Boeing managers involvement in Spirit's decision-making process, but again, the emphasis is always on Spirit: "Spirit used personnel from Boeing's Human Resources organization to oversee the selection process and to train managers;" "The entire process was designed to make sure that Spirit could start its business with the best available employees."[25] Even viewed in the light most favorable to the Plaintiff, nothing in the record indicates that Boeing played any role in Spirit's decision to not hire Plaintiff apart from loaning its employees to act as agents for Spirit. Plaintiff has not shown that Brosius and Alumbaugh were acting as agents of Boeing when these decisions were made. Plaintiff's unsupported "conclusory allegations" that Boeing was engaged in the hiring process that eventually lead to Plaintiff not being hired are insufficient to overcome a motion for summary judgment.

**IT IS THEREFORE ORDERED** that Boeing's Motion for Summary Judgment (Doc. 36) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 29th day of July, 2014.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] Defendant Boeing's Answers and Objections to Plaintiff's First Set of Interrogatories, Doc. 40, p. 2.

[25] Defendant Spirit's Answers and Objections to Plaintiff's First Set of Interrogatories, Doc. 41, p. 2-5.